# Exhibit C

IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| LEJAMES NORMAN, Petitioner | X X | |
| V. | X X | CAUSE NO. 6:12-mc-00003 |
| RICK THALER, Director, Texas Department of Criminal Justice, Institutional Division | X X X | |

## DECLARATION OF ELLIOTT H. COSTAS

I, ELLIOTT H. COSTAS, declare as follows:

1. I was originally appointed by Judge Pat Kelly who had jurisdiction in Jackson County, to represent LeJames Norman. Because the evidence of Mr. Norman's guilt was strong, I concluded that, if he were to avoid the death penalty, the focus would have to be on the penalty phase. To that end, I retained the services of Dr. Mark Cunningham who had a good reputation in Texas; he was highly recommended by other capital defense counsel. He wrote a lot of the articles that other mitigation specialists relied upon. After discussing the case with him, I thought he would present a great deal of good information to the jury.

2. Briefly, Dr. Cunningham spent a good many years researching incidents of future violence committed by Texas defendants sentenced to life

imprisonment following a conviction for capital murder. He factored into his research the conditions of confinement for the Texas Department of Criminal Justice, Institutional Division, including the steps taken by the prison system to protect their employees and other inmates. He concluded that the incidents of violence inflicted on other people were very rare for inmates convicted of capital murder but sentenced to life. I thought this evidence was very compelling.

3. Dr. Cunningham would also have been able to place what mitigating evidence we had into the appropriate context, something that I believed to be very important. It's one thing to present anecdotal information to a jury about a person's life but without some psychological context to explain that evidence, juries often misunderstand it.

4. After we started jury selection in the case, the District Attorney of Jackson County, Bobby Bell, issued a subpoena duces tecum to Dr. Cunningham demanding that he produce all of his case files for the ten years before the trial plus all of his personal and professional tax records.. I believed that this was an abuse of the subpoena power to issue such a request. In retrospect, I believe that the subpoena was especially egregious since it was issued while we were in the middle of jury selection. After consulting with Dr. Cunningham, I filed a motion for protection seeking to quash the subpoena. I brought this to Judge Kelly's attention at least twice but the court never set a hearing on it and jury selection continued. Dr. Cunningham ultimately retained counsel and told me that he could not

appear on behalf of Mr. Norman. Dr. Cunningham would not violate the confidentiality he had with his other capital defendants and viewed the request for his tax returns over such a broad time span to be a violation of his privacy. Further, I believe Dr. Cunningham was seriously concerned of what might happen to him at the hands of Bobby Bell. Mr. Bell, based on my conversations with Dr. Cunningham's counsel, was especially belligerent, beyond the scope of the legal adversarial system.

5. Dr. Cunningham's counsel filed a motion to quash the subpoena duces tecum and a motion for Dr. Cunningham to withdraw from the case. Lawyers from all over the country filed objections to producing their client's files. Judge Kelly finally set a hearing in order to hear these various motions. I then tried to find another expert to take Dr. Cunningham's place but no one would agree to assist us. I finally moved to withdraw from the case arguing that my client had been deprived of the effective assistance of counsel. Judge Kelly initially denied that request until I reurged the motion. Throughout this process, my cocounsel continued the voir dire while I searched to no avail for another expert. Mr. Bell then stood up in court to volunteer the services of Allen Tanner. Judge Kelly then granted my request, declared a mistrial and appointed Mr. Tanner. Mr. Tanner contacted me only once after that to ask if there was anything he ought to know about the case.

6. I was told by one of the experts I contacted after Cunningham withdrew that she was afraid to testify because of both the time constraints and because of Bell's intimidating tactics.

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE, RECOLLECTION, AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

DATED THIS 22nd day of August, 2013

_____
ELLIOTT H. COSTAS